JS6

FILED
CLERK, U S DISTRICT COURT

08-28-02

AUG 28 2002

CENTRAL DISTRICT OF CALIFORNIA
BY                         DEPUTY

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCELLA T. ALBERS and RAYMOND H. ALBERS, II<br><br>Plaintiffs,<br><br>v.<br><br>GUTHY-RENKER CORPORATION, a California corporation, GUTHY-RENKER INTERNET, LLC, a California limited liability company, BILL GUTHY, GREG RENKER, AD CHOICE, LLC, a Texas limited liability company, ADVERTISING COOPERATIVE, a limited partnership existing under the laws of Texas, LANCE BROOKS, MICHAEL J. MALECKI, and DOES 1-10<br><br>Defendants. | **Case No. CV 99-3573-GAF (SHx)**<br><br>**ORDER REGARDING DEFENDANTS WILLIAM GUTHY, GREGORY RENKER, GUTHY-RENKER CORPORATION AND GUTHY-RENKER INTERNET, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

ENTERED ON CMS

AUG 29 2002

CV

✓ Docketed
✓ Copies / NTC Sent
✓ JS - 5   JS - 6
___ JS - 2 / JS - 3
___ CLSD

I.

## INTRODUCTION

This action arises out of an alleged Internet-related investment scheme through which Plaintiff Marcella T. Albers ("M. Albers") and her husband lost $36,000. In the fifty-four page second amended complaint ("SAC") that defies both

1

140

1   the letter and spirit of the pleading requirements set forth in the Federal Rules of Civil

2   Procedure, Plaintiffs M. Albers and Raymond H. Albers, II ("Albers, Jr."), name as

3   defendants in this lawsuit numerous individuals, two limited liability companies, one

4   de facto limited partnership, and a California corporation.

5          Plaintiffs' original and first amended complaints asserted numerous causes of

6   action against Defendants Ad Choice, LLC ("Ad Choice"), Lance Brooks and Michael

7   Malecki (collectively the "Ad Choice Defendants").  Following leave by this Court,

8   Plaintiffs filed the SAC, which names for the first time Defendants Guthy-Renker

9   Corporation ("GRC"), Guthy-Renker Internet, LLC ("GRI"), William Guthy and Greg

10  Renker (collectively the "G-R Defendants").  Plaintiffs also name Defendant

11  Advertising Cooperative (the "Cooperative"), which is defined as a limited partnership

12  existing under the laws of Texas, and can be characterized as an additional Ad

13  Choice Defendant.  The SAC pleads four alternative theories of liability against the

14  G-R Defendants: direct claims based on the alleged wrongdoing of the G-R

15  Defendants; direct claims based on the alleged wrongdoing of the Ad Choice

16  Defendants under an agency theory of liability; derivative claims brought on behalf of

17  Ad Choice and the Cooperative; and proposed class action claims brought on behalf

18  of those who invested in the ACM scheme.  In all, the SAC alleges 23 causes of

19  action against the G-R Defendants, including claims under RICO, 18 U.S.C. § 1962,

20  and numerous California state laws.

21         The G-R Defendants responded by filing the present motion for judgment on

22  the pleadings under Federal Rule 12(c), asserting all G-R Defendants are entitled to

23  judgment in their favor with respect to all claims brought against them, regardless of

24  the theory of liability.  Having now spent considerable time reading and considering

25  the operative complaint and the parties' papers, the Court concludes that for the

26  various reasons set forth below, Defendants' Rule 12(c) motion should be

27  **GRANTED IN PART AND DENIED IN PART.**

28

1      As a threshold matter, the Court concludes that Plaintiff Albers Jr. must be

2  dismissed from this action, because he fails to satisfy the Article III standing

3  requirements, and is not a proper plaintiff to bring suit under his own name for the

4  benefit of his father's estate.  The Court further concludes that Plaintiff M. Albers

5  lacks standing to bring the direct and class action claims alleged against the G-R

6  Defendants for their own alleged wrongdoing, and dismisses those claims from this

7  action.  Moreover, because the Court concludes that Plaintiff M. Albers is unable to

8  maintain the derivative claims brought on behalf of Ad Choice or the Cooperative, the

9  Court dismisses those claims as well.

10      Turning to the merits of the claims that remain against the G-R Defendants,

11  the Court concludes that the SAC alleges no set of facts which would support

12  recovery against Defendants Guthy and Renker, entitling these two individual

13  Defendants to judgment in their favor as to all claims brought against them.

14  Moreover, the Court concludes that GRC and GRI are entitled to judgment on the

15  pleadings with respect to the one remaining RICO claim brought against these two

16  Defendants, a claim that is alleged under the agency theory of liability, because the

17  SAC fails to adequately allege a substantive RICO violation under 18 U.S.C. § 1962

18  against the Ad Choice Defendants.  Given this failure to allege a substantive violation

19  under RICO against any named Defendant, the Court dismisses both remaining

20  RICO claims from this case.

21      In light of this Court's dismissal of the two remaining RICO claims, no other

22  federal cause of action remains in this case.  Therefore, because the Court declines

23  to exercise supplemental jurisdiction over the remaining state law claims, the Court

24  **DISMISSES** this action in its entirety.

25  //

26  //

27  //

28  //

II.

## FACTUAL BACKGROUND

### A. THE PARTIES

Plaintiffs Marcella T. Albers ("M. Albers") and Raymond H. Albers, II ("Albers Jr.")[1] bring suit against Defendants Ad Choice, LLC ("Ad Choice"), Advertising Cooperative (the "Cooperative"), Lance Brooks ("Brooks"), Michael Malecki ("Malecki"), Guthy-Renker Corporation ("GRC"), Guthy-Renker Internet, LLC ("GRI"), William Guthy ("Guthy") and Greg Renker ("Renker"), alleging claims under RICO, 18 U.S.C. § 1962, along with numerous claims under state law.

GRC is a California corporation that engages in product promotion via infomercials and seminars. (Second Amended Complaint ("SAC") ¶ 15). During all times relevant to this action, GRC and GRI jointly owned the Internet venture America's Choice Mall ("ACM"), a virtual mall web site where individuals and business owners can advertise and sell products or services through page listings on the website. (Id. ¶¶ 6-7, 17). GRC apparently created GRI, a California limited liability company, to promote products in the Internet marketplace. (Id. ¶¶ 7, 16 ).[2] Defendants Guthy and Renker are California residents, and owners of GRC and GRI. (Id. ¶ 8).

Defendants Brooks and Malekci formed Defendant Ad Choice, a Texas limited liability company, and serve as the company's sole officers and directors. (Id. ¶ 9). The SAC characterizes Defendant Cooperative as a de facto limited partnership under Texas law, where Ad Choice, Malecki and Brooks serve as its general

---

[1] Albers Jr. participates in the present action based upon: (1) his personal knowledge of and involvement with, Defendants Ad Choice, Brooks and Malecki; and (2) his rights, powers and interests with respect to the estate of his father, Raymond Albers, Sr. ("Albers Sr."). (Second Amended Complaint ("SAC") ¶ 5).

[2] The SAC alleges the following regarding the relationship between GRC and GRI with respect to the time period relevant to this action: (1) that GRC owned and controlled GRI directly or indirectly; (2) that GRC was responsible for a substantial amount of GRI's advertising; and (3) that GRC had significant control over GRI's ability to fulfill its contractual obligations relating to ACM. (Id. ¶ 24).

1   partners. (Id.) The SAC further alleges that "[a]t all times relevant herein, Brooks,

2   Malecki and Ad Choice were the agents and fiduciaries of the Plaintiffs and other

3   investors in Ad Choice (or the Cooperative)." (Id. ¶ 10, n. 9).

4   **B. THE ACM SEMINARS AND ASSOCIATE AGREEMENTS**

5        Plaintiffs allege that even though GRC and GRI had no experience

6   or expertise in the Internet or the World Wide Web, the two companies began

7   advertising and conducting seminars throughout the country to promote the ACM

8   venture. (Id. ¶¶ 16, 17). This Internet venture involved the sale of ownership

9   interests in the ACM marketplace, which were known as Page Shares (or Web

10  pages). (Id. ¶¶ 16, 18). GRC and GRI sold the Page Shares directly to seminar

11  attendees, who in turn could elect to use the space or lease it to third parties. (Id. ¶

12  18).

13       On June 2, 1996, Defendant Malecki attended an ACM seminar in Dallas,

14  Texas, and received one Page Share in exchange for the required payment of

15  $1,190.00. (Id. ¶ 19). During the seminar, GRC and GRI encouraged attendees

16  such as Malecki to form joint ventures or other business entities to raise capital to

17  purchase more Page Shares, and touted an expected increase in value of these

18  limited-in-number Shares. (Id. ¶ 20). GRC and GRI also made exaggerated claims

19  to the seminar attendees regarding the profitability of the ACM venture. (Id. ¶ 22).

20       Shortly thereafter, Malecki and Brooks entered into an Associate agreement

21  ("Agreement") with GRC and GRI, which apparently asserted Malecki to serve as a

22  distributor of ACM Page Shares. (Id. ¶ 24, n. 15). The Agreement indicates that the

23  contract was executed between Malecki and GRI, where Malecki signed for Ad

24  Choice. (Mot. at 3; Ex. A).[3] According to the terms of the Agreement, Ad Choice

25  was authorized to act as an "Associate" of ACM, promoting and selling Internet

26

27  [3]  Given the SAC's reference to the Associate Agreement, the Court can consider the contents
     of that document in resolving the present motion. See Branch v. Tunnell, 14 F.3d 449, 453-54
28  (9th Cir. 1994)(citations omitted)(stating a document is not considered "outside" the complaint
     if plaintiff specifically references it in the complaint, and its authenticity is not questioned).

1  products and services, and marketing website listings. (Id.) The Agreement also

2  provides that Ad Choice was to identify itself as an "Independent Associate" in all

3  written correspondence and oral communication. (Id.)

4      Around this same time, Brooks and Malecki formed Ad Choice. (Id. ¶ 21).

5  According to the company's Articles of Organization, Ad Choice was formed on July

6  3, 1996, pursuant to the Texas Limited Liability Company Act. (See Request for

7  Judicial Notice ("Notice") ¶ 3). Due to its failure to submit franchise tax reports, Ad

8  Choice's charter was subsequently forfeited on February 11, 2000. (Id.)[4]

9  **C. THE ALBERS' INVESTMENT IN AD CHOICE (OR THE COOPERATIVE)**

10      Following the formation of Ad Choice, Brooks and Malecki solicited money

11  from at least 17 "elderly Americans," including Plaintiff M. Albers and Raymond

12  Albers, Sr. ("Albers, Sr.")(referred to collectively as "the Albers"), to invest in Ad

13  Choice's plan to purchase ACM Page Shares. (SAC ¶ 21, n. 24). In the course of

14  these solicitations, Brooks and Malecki relied on printed and oral representations

15  made to Brooks during the ACM seminar, as well as other direct communications

16  from GRI. (Id.) In total, the Albers invested $36,000 in Ad Choice (and/or the

17  Cooperative) in 1996 and 1997. (Id.) Although Brooks and Malecki did not always

18  acknowledge receipt of such investment monies, they assured the Albers that Ad

19  Choice used the monies to purchase ACM Page Shares on the investors' behalf.

20  (Id.) And the SAC alleges that GRC and GRI mailed certificates to Brooks and

21

22

23  [4] Defendants request the Court take judicial notice of these facts relating to both the creation
    and forfeiture of Ad Choice's charter pursuant to Federal Rule of Evidence 201. A court may

24  take judicial notice of a fact that is not subject to a reasonable dispute because it is either "(1)
    generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and

25  ready determination by resort to sources whose accuracy cannot reasonably be questioned."
    Fed. R. Evid. 201. Moreover, a court can take judicial notice of matters of public record outside

26  the pleadings when resolving a motion to dismiss. MGIC Indemnity Corp. v. Weisman, 803 F.2d
    500, 504 (9th Cir. 1986). In support of their request, Defendants offer a certified copy of Ad

27  Choice's Articles of Organization and a document entitled, "Determination of Forfeiture," both
    of which are on file with the Texas Secretary of State. (See Notice Ex. 3). Finding no reason

28  to question the accuracy of these documents, the Court concludes that the facts in issue are
    capable of accurate and ready determination, and **GRANTS** Defendants' request.

1   Malecki indicating ownership interests in ACM Page Shares purchased by Ad

2   Choice.  (SAC ¶ 23).

3        The SAC further alleges that the Albers and other investors formed the

4   Cooperative with Ad Choice by entering into a "Preformation Agreement," which gave

5   Brooks, Malecki and Ad Choice express authority to act on the investors' behalf in

6   purchasing ACM Page Shares.  (Id. ¶¶ 10, n. 9 and 21, n. 13).  According to the

7   SAC, the purpose of the Cooperative was "to handle and maintain the investments

8   solicited from their individual investors," where Ad Choice was to manage its

9   business affairs.  (Id. ¶ 21, n. 13).

10   **D. THE PRESENT LAWSUIT**

11        On April 2, 1999, Plaintiffs brought suit against Ad Choice, Brooks and

12   Malecki (collectively the "Ad Choice Defendants") seeking damages arising out of the

13   Albers' $36,000 investment in Ad Choice.[5]  Shortly thereafter, Plaintiffs filed a first

14   amended complaint ("FAC") on May 25, 1999.  The FAC made the same factual

15   allegations against the Ad Choice Defendants, but did so under amended legal

16   claims.

17        Approximately two years later, Plaintiffs filed a motion for leave to file a

18   second amended complaint, which this Court granted on June 20, 2001.  The SAC

19   adds as Defendants GRC, GRI, Guthy and Renker (collectively the "G-R

20   Defendants") as well as an additional Ad Choice Defendant, the Cooperative.  In this

21   amended pleading Plaintiffs not only seek direct recovery against the G-R

22   Defendants and the Ad Choice Defendants, but also plead alternative theories of

23   recovery against the G-R Defendants by way of derivative and class action claims,

24   as well as by direct claims against GRI and GRC under an agency theory of liability

25   for the alleged wrongdoing of the Ad Choice Defendants.  (See id. ¶ 26).  In all, the

26

27   _____

28   [5]  In an order dated February 24, 2000, the Court issued a stay of this action as against
     Defendants Malecki and Brooks, pending resolution of their individual bankruptcy proceedings.

1  SAC alleges 23 causes of action against the G-R Defendants, including claims under

2  RICO, 18 U.S.C. § 1962, and numerous state laws.

3      Before the Court now is the G-R Defendants' Motion for Judgment on the

4  Pleadings pursuant to Federal Rule of Civil Procedure 12(c).  The G-R Defendants

5  argue the Court should enter judgement in their favor on all claims alleged against

6  them under all theories of recovery set forth in the SAC.

7                                      III.

8                                  **ANALYSIS**

9  A. THE LEGAL STANDARD UNDER RULE 12(C)

10     A motion for judgment on the pleadings, pursuant to Rule 12(c), is a proper

11 means to challenge the sufficiency of the complaint after an answer has been filed.

12 See Fed. R. Civ. P. 12(c).  Rule 12(c) is a vehicle for summary adjudication, but the

13 standard is like that of a motion to dismiss.  Hishon v. King & Spalding, 467 U.S. 69,

14 73 (1984).  Dismissal is proper only if it appears beyond a doubt that the plaintiff can

15 prove no set of facts in support of his claim which would entitle him to relief.  Sun

16 Savings & Loan Ass'n v. Dierdorff, 825 F.2d 187, 191 (9th Cir. 1987).  In ruling on a

17 motion for judgment on the pleadings, the court must construe the complaint, and

18 resolve all doubts, in the light most favorable to the plaintiff.  General Conference

19 Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church,

20 887 F.2d 228, 230 (9th Cir. 1989).  Although the court must accept all material

21 allegations in the complaint as true, the court need not accept as true conclusory

22 allegations or legal characterizations.  Ove v. Gwinn, 264 F.3d 817, 821 (9th Cir.

23 2001); McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988).

24     In deciding a motion for judgment on the pleadings, the court generally is

25 limited to the pleadings and may not consider extrinsic evidence.  See Fed. R. Civ. P.

26 12(c).  A district court may, however, consider documents "whose contents are

27 alleged in a complaint and whose authenticity no party questions, but which are not

28 physically attached to the pleading."  Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir.

1   1994).  Moreover, a district court may consider a document if it is "necessarily relied"

2   upon by the complaint, as long as the authenticity of the document is not challenged.

3   See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998).

4   **B. WHETHER ALBERS, JR. IS A PROPER PLAINTIFF**

5        The G-R Defendants argue that Albers, Jr. lacks standing to bring any claims

6   in his own name because he alleges no injury in fact.  Moreover, even if Albers, Jr. is

7   participating in this action by way of his unidentified "rights, powers and interests with

8   respect to the estates of the Albers, Sr," Defendants contend he fails to satisfy the

9   procedural requirements under Federal Rule of Civil Procedure 17(a) regarding the

10  real party in interest with respect to a particular claim or action.  (See Mot. at 13-

11  14)(citing SAC ¶ 5).  Plaintiffs counter that Albers, Jr. has standing to sue in his own

12  name based on the power of attorney executed and granted to him by Albers, Sr.,

13  and the rights under his deceased father's estate.  (See Opp. at 12-13, n. 32).  The

14  Court will address both arguments in turn.

15       **1. Article III Standing**

16       Plaintiff Albers, Jr. fails to allege an injury in fact arising from the alleged

17  wrongdoing of the Ad Choice or G-R Defendants.  The SAC contains no allegation

18  that Albers, Jr. had any involvement with the G-R Defendants.  Moreover, although

19  Albers, Jr. claims that he participates in this action based, in part, on "his personal

20  knowledge of and involvement with" the Ad Choice Defendants, the only support for

21  this claim in the SAC is a conclusory allegation that "Plaintiffs were and are members

22  of record of Ad Choice, or in the alternative were and are limited partners of the

23  Cooperative."  (SAC ¶ 27, n. 17).  The SAC contains no allegations that indicate

24  Brooks or Malecki solicited monies from Albers, Jr. for investment in Ad Choice, or

25  that otherwise explain his alleged interest in Ad Choice or the Cooperative.

26  Moreover, the SAC contains no allegations that Albers, Jr. invested money in the

27  alleged ACM investment scheme, or that he had any personal involvement in the

28  ACM scheme.  Thus, the Court was unable to identify any factual allegations which

1   would explain the nature of Albers, Jr's involvement with any of the named

2   Defendants, or any personal injury suffered in light of such involvement.

3        In resolving this motion, the Court is not to assume Plaintiffs can prove facts

4   not alleged in the complaint.  See Associated Gen. Contractors of Cal. v. California

5   State Council of Carpenters, 459 U.S. 519, 526 (1983).  And without any direct injury

6   in fact alleged in the SAC, Albers, Jr. fails to satisfy the threshold question of

7   standing.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)(internal

8   citations omitted)(stating that as an irreducible constitutional minimum of standing,

9   Article III requires a plaintiff to have suffered an "injury in fact," the invasion of a

10  legally protected interest which is "concrete and particularized" and "actual or

11  imminent").  Thus, the Court concludes Albers, Jr. lacks standing to bring any claims

12  in the instant action under his own name.

13       **2. Real Party In Interest**

14       Given that Albers, Jr. also claims to participate in this action based on

15  the "rights, power and interests with respect to the estates of the Albers, Sr.," the

16  Court will also consider whether he is a proper plaintiff, at least with respect

17  to those claims that the real party in interest, the Estate of Albers, Sr., would have

18  standing to bring.[6]  After reviewing the factual allegations set forth in the SAC and

19  the relevant authority, the Court concludes that Albers, Jr. fails to satisfy the

20  procedural requirements under Federal Rule 17(a) to bring this action under his own

21  name for the benefit of the real party in interest.

22

23  _____

24  [6]  The concept of a real party in interest under Rule 17(a) is meant "to identify the person who
possesses the right sought to be enforced." Wright, Miller & Kane, 6A Federal Practice and

25  Procedure § 1542 (2d ed. 1990).  In one sense, the rule is similar to the requirements for
standing, because both serve to determine who is entitled to be heard on the merits in an action.

26  Weissman v. Weener, 12 F.3d 84, 86 (7th Cir. 1993). However, the two concepts are distinct,
and a court's assessment of whether an individual is a real party in interest, and thus has the

27  right to sue under substantive law, is separate from a court's jurisdictional analysis regarding
whether an individual has standing to bring suit; analysis under the former never automatically

28  satisfies an analysis under the latter.  See Kent v. Northern Cal. Regional Office of the Am.
Friends Serv. Comm., 497 F.2d 1325, 1329 (9th Cir. 1974).

1    "Every action shall be prosecuted in the name of the real party in interest."

2    Fed. R. Civ. P. 17(a).  A "real party in interest" is the person that holds the

3    substantive right sought to be enforced.  U-Haul Int'l, Inc. v. Jartran, Inc., 793 F.2d

4    1034, 1037 (9th Cir. 1986).  The real party in interest holds the substantive right to

5    be enforced, even where another person is the beneficiary of any recovery under

6    that right.  See William W. Schwarzer, et al., California Practice Guide: Federal Civil

7    Procedure Before Trial, § 7:3 (The Rutter Group 2001)(citing In re National Gypsum

8    Co., 219 F.3d 478, 483 (5th Cir. 2000)).  An assignment of a claim serves to make

9    the assignee the real party in interest in an action with respect to that claim, and the

10   assignee may bring suit in his or her own name without joining the assignor.

11   Schwarzer, supra, § 7:10.11 (citing Advanced Magnetics, Inc. v. Bayfront Partners,

12   Inc., 106 F.3d 11, 18 (2d Cir. 1997)).  However, the grant of a power of attorney, by

13   itself, does not constitute such an assignment.  Id.

14   Here, Albers, Jr. does not allege he is the assignee of his father's claim

15   against any of the Defendants named in this action.  And even assuming the truth of

16   the allegation that Albers, Sr. granted a power of attorney to his son, that grant does

17   not serve to make Albers, Jr. the real party in interest here, such that he could then

18   sue under his own name.  Rather, the Estate of Albers, Sr. remains the real party in

19   interest.

20   Nevertheless, Federal Rule 17 includes the following exception to the general

21   rule that an action must be prosecuted in the name of the real party in interest:

22   An executor, administrator, guardian, bailee, trustee of an express trust, a
     party with whom or in whose name a contract has been made for the benefit
23   of another, or a party authorized by statute may sue in that person's own
     name without joining the party for whose benefit the action is brought; ....
24

25   Fed. R. Civ. P. 17(a).  Here, the SAC provides no explanation of the nature of the

26   rights and powers allegedly held by Albers, Jr. with respect to his father's estate, and

27   the Court is unable to determine whether those rights and powers satisfy one of

28   circumstances in the exception outlined above.  Thus, the Court concludes that

11

1 │ Albers, Jr. is not a proper plaintiff to bring suit for the benefit of his father's estate,

2 │ because he fails to satisfy the procedural requirements of Rule 17(a). Accordingly,

3 │ the Court **DISMISSES** Albers, Jr. from this case.[7]

4 │ **C. THE DIRECT CLAIMS AGAINST THE G-R DEFENDANTS FOR THEIR OWN ALLEGED**

5 │ **WRONGDOING**

6 │      The G-R Defendants argue Plaintiff M. Albers lacks standing to bring any

7 │ direct claims against them based on the alleged transactions between GRC/GRI and

8 │ the Ad Choice Defendants. (Mot. at 12). Defendants assert that even if this Court

9 │ were to assume that Ad Choice was harmed by the alleged wrongdoing of the G-R

10 │ Defendants in connection with the ACM investment scheme, any resulting harm to

11 │ M. Albers is merely indirect in nature, because as a member of the limited liability

12 │ company, she has no direct interest in the company's property. (See Mot. at 13;

13 │ Reply at 10-11). The Court agrees. A diminution in the value of M. Albers'

14 │ membership interest in Ad Choice is insufficient to satisfy the injury in fact

15 │ requirement of Article III standing, and any claim brought against the G-R

16 │ Defendants based on this alleged injury is actually derivative in nature.

17 │      When assessing whether a claim brought under a federal statute is direct or

18 │ derivative in nature, a court should apply state law. Lapidus v. Hecht, 232 F.3d 679,

19 │ 682 (9th Cir. 2000). Although Lapidus involved a claim brought under the Investment

20 │ Company Act, the underlying question presented to that court went to the nature of

21 │ the individual shareholder's claim under a federal statute. See id. That question is

22 │ similar to the one presented to this Court – whether a RICO claim brought by a

23 │ member or, alternatively, a limited partner, is direct and personal to M. Albers, or

24 │

─────────────────────

25 │ [7] In the alternative, Plaintiffs request this Court provide Plaintiffs with a reasonable time in which

26 │ to join or substitute the real party in interest in this action before entering a dismissal on the
   │ ground that Albers, Jr. is not the real party in interest here, insisting such a delay is required by

27 │ Rule 17(a). (See Opp. at 13, n. 30). The Court declines to entertain this request. A delay is
   │ not required in the instant case, as the Court's dismissal of Albers, Jr. does not dispose of the

28 │ entire action.

1   whether it is derivative in nature and brought on behalf of Ad Choice or the

2   Cooperative. Because the relevant entity here is Ad Choice, or alternatively, the

3   Cooperative, both of which are formed under Texas law, the Court must turn to the

4   law of that state in resolving this issue. See id.

5         Under Texas law, where wrongful conduct results in the improper deprivation

6   of a corporation's assets, the injury is to the corporation itself. See Gamboa v.

7   Shaw, 956 S.W.2d 662, 666 (Tex. App. 1997). Any resulting depreciation to the

8   value of a shareholder's investment in the corporation is considered an indirect injury

9   to the individual shareholder. See id. In Gamboa, the plaintiff, a shareholder in a

10  corporation, brought a legal malpractice action against an attorney arising out of the

11  attorney's representation of the corporation and its majority shareholders in a

12  separate action. Id. The court concluded that the plaintiff lacked standing to

13  maintain the claim against the attorney, because any harm caused by the attorney's

14  actions in his earlier representation of the corporation would be to the corporation

15  and its assets, not to an individual shareholder. See id. Moreover, Texas law also

16  provides that a member or assignee of a limited liability company has no personal

17  interest in the company's property. See Texas Limited Liability Company Act, Tex.

18  Civ. St. Ann. Art. 1528n, § 4.04 (Vernon 2001). Thus, by way of analogy to the

19  court's reasoning in Gamboa, where the claim is one of improper deprivation of a

20  limited liability company's assets, the injury is to the company itself rather than to any

21  member of that company.[8]

22        Moreover, under California law, a member or assignee of a limited liability

23  company also has no direct or personal interest in the company's property. See Cal.

24

25  [8] In the context of Texas partnership law, a limited partner also has no personal interest in
    specific partnership property, because the partner's interest in the partnership is personal

26  property. See Texas Revised Limited Partnership Act, Tex. Civ. St. Ann. Art. 6132a-1, § 7.01
    (Vernon 2001); see also 7547 Corp. v. Parker & Parsley Dev. Partners, L.P., 38 F.3d 211, 221

27  (5th Cir. 1994)("Indeed, the fact that Texas now has a statute expressly allowing limited partners
    to sue derivatively on behalf of the partnership--thus making their status more equivalent to that

28  of a shareholder--leads us to believe that a Texas court would likely be hesitant to allow a limited
    partner to sue directly for wrongs suffered in reality by the partnership.").

1  Corp. Code § 17300 (West Supp. 2001).  And in <u>Paclink Communications Int'l, Inc. v.</u>

2  <u>Superior Court</u>, 90 Cal. App. 4th 958 (2001), a California appellate court even

3  addressed the issue of direct versus derivative claims in the context of a suit brought

4  by members of a limited liability company.  The court applied principles of derivative

5  lawsuits applicable to corporations in deciding whether the injury alleged was to the

6  company itself or to the members actually bringing the action.  <u>Id.</u> at 963-64 (<u>citing</u>

7  <u>Jones v. H.F. Ahmanson & Co.</u>, 1 Cal. 3d 93, 106-07 (1969)).  Summarizing

8  plaintiffs' claim as a fraudulent transfer of a limited liability company's assets without

9  any compensation paid to the company, the court concluded the injury was to the

10  company itself.  <u>Id.</u> at 964 (holding that because members cannot be directly injured

11  when the company is improperly deprived of its assets, plaintiffs lacked standing to

12  bring claims against the defendants except through a derivative action).  The Court

13  finds this analysis persuasive when addressing the propriety of M. Albers' direct

14  claims against the G-R Defendants.

15        Here, Plaintiff M. Albers claims has been injured by "the failure of [GRC] and

16  GRI to perform or to return money to the Plaintiffs (and the other investors) through

17  Ad Choice." (SAC ¶¶ 38, 62, 109).  In some instances, she even frames the

18  investment money lost as a loss of her own property. (<u>See</u> SAC ¶ 76).  However, the

19  crux of the injury outlined in the SAC relates to the allegation that Ad Choice, Brooks

20  and Malecki relied on GRI and GRC's alleged false representations regarding ACM's

21  profitability and GRI's technical expertise, which in turn caused Ad Choice to invest

22  funds in the ACM investment scheme on behalf of its investors.  The SAC further

23  alleges that Ad Choice detrimentally relied on those representations, as the ACM

24  scheme proved unsuccessful, causing Ad Choice to lose money, and thus, for its

25  investors to suffer a loss. (SAC ¶¶ 49-51).[9]

26

27  [9] The Court notes this characterization of Plaintiffs' direct claims against the G-R Defendants
does not include the claims alleged against the G-R Defendants under an agency theory of

28  liability for the alleged wrongdoing of the Ad Choice Defendants.  The Court will address those

(continued...)

1        Based on the analysis set forth in <u>Paclink</u>, the Court concludes that Plaintiff M.

2   Albers lacks standing to bring her direct claims against the G-R Defendants for the

3   alleged wrongdoing of GRC and GRI in connection with the ACM investment

4   scheme.  Once the Albers invested in Ad Choice, those investment monies became

5   property of Ad Choice.  Any diminution in the value of that investment allegedly

6   caused by the actions of the G-R Defendants directly injures Ad Choice, and only

7   indirectly injures M. Albers through her membership interest in Ad Choice.  Moreover,

8   given the similarity under Texas law between a member's interest in the property of a

9   limited liability company and a limited partner's interest in partnership property, the

10  Court's standing analysis applies regardless of whether the Court regards Plaintiff as

11  a member of Ad Choice or as a limited partner of the Cooperative.  Thus, the alleged

12  injury to Ad Choice or the Cooperative arising from the alleged wrongdoing of the G-

13  R Defendants may only be addressed by way of derivative claims brought on behalf

14  of Ad Choice or the Cooperative.  Accordingly, the Court **DISMISSES WITH**

15  **PREJUDICE** the direct claims brought against the G-R Defendants in M. Albers'

16  individual capacity.[10]

17  **D. THE CLAIMS AGAINST DEFENDANTS GUTHY, RENKER AND GRC**

18        The G-R Defendants also argue that Defendants GRC, Guthy and Renker are

19  entitled to judgment in their favor with respect to all claims alleged against them,

20  regardless of the theory of liability.  Specifically, the G-R Defendants contend that

21  although the SAC names GRC and two if its shareholders as defendants, the

22  operative complaint fails to plead any specific factual allegations which would

23  support recovery against these Defendants, and instead focuses on the alleged

24  wrongdoing of GRI.  (Mot. at 6).

25

26  [9](...continued)
27  claims separately below.

28  [10]  This holding relates to the following causes of action: I, IV, V, VIII, XI, XIV, XV, XVIII, XIX,
    XXII, XXV, XXVIII.

1        Plaintiffs counter that because the Court must assume the truth of the

2    allegation that Guthy and Renker are owners of GRC and GRI, the two individual

3    Defendants are "indeed vicariously liable" for the acts of GRC and GRI.  (Opp. at 5,

4    n. 8)(citing SAC ¶ 8).  In support of this argument, Plaintiffs claim that as owners and

5    principals of the "guilty corporations," the two individual Defendants sanctioned the

6    alleged wrongdoing of their companies, and thus, are vicariously liable for the acts of

7    their employees and/or agents.  (Id.)  They further argue that assuming the truth of

8    the allegation that GRC owned and controlled GRI during the time period in question,

9    GRC is liable for the acts of GRI as the owner of this subsidiary.  (Opp. at 5, n.

10    7)(citing SAC ¶ 24).

11        In light of the Court's above conclusion that M. Albers lacks standing to bring

12    direct claims against the G-R Defendants in her individual capacity, the issue

13    presented here is narrowed to a determination of whether GRC, Guthy and Renker

14    remain proper defendants in the derivative and proposed class claims brought

15    against them.  After considering the parties' arguments and the relevant authority,

16    the Court concludes that while the SAC fails to allege any specific facts relating to

17    the conduct of Defendants Guthy and Renker which would support recovery from

18    them, the same cannot be said of GRC.

19    **1. Defendants Guthy and Renker**

20        Here, the only specific allegations regarding Defendants Guthy and Renker

21    relate to the fact that they are owners of both GRC and GRI, and "have been

22    ultimately responsible for all activities conducted directly or indirectly by [GRC], GRI,

23    their officers, employees and agents."  (SAC ¶ 8).  These allegations are followed by

24    the broad statement that "[u]nless otherwise stated, all references herein to [GRC]

25    and GRI shall also refer to Guthy, Renker, their officers, employees and agents."

26    (Id.)  If the Court were to accept this general statement as true, all references to

27    GRC and GRI are also to be construed as references to Guthy and Renker.

28    However, the Court need not accept such a construction of the SAC's allegations.

1    It is well settled that while a court takes as true all factual allegations found in

2    a complaint when deciding whether to dismiss an action under Rule 12(c),

3    conclusory allegations of law and unwarranted inferences need not be accepted as

4    true. Ove, 264 F.3d at 821; McGlinchy, 845 F.2d at 810; see also 2 Moore's Federal

5    Practice § 12.34(1)(b)(Matthew Bender 3d ed. 2001)(citations omitted) ("Conclusory

6    allegations or legal conclusions masquerading as factual conclusions will not suffice

7    to prevent a motion to dismiss."). Thus, because the SAC contains no specific

8    factual allegations from which this Court could even reasonably infer Guthy or

9    Renker's actual involvement in the alleged ACM scheme or the related transactions

10   with the Ad Choice Defendants, the Court will not accept the unsupported and

11   conclusory allegation of such involvement found in the SAC. Therefore, the Court

12   concludes that the SAC fails to allege facts that would support recovery from either

13   individual Defendant for their own actions.

14   The Court must also consider whether Plaintiffs have sufficiently plead facts

15   which, if ultimately proven as true, would support recovery from Defendants Guthy

16   and Renker based upon a theory of vicarious liability. As the Court noted above,

17   Plaintiffs contend that the two individual Defendants are principals of GRC and GRI,

18   and thus, are liable for the acts of the two "guilty corporations" under traditional

19   agency principles. (See Opp. at 5, n. 8). However, the SAC is void of any

20   allegations that Defendants Guthy or Renker are somehow the principals of GRC

21   and GRI. The SAC also contains no specific allegations which might support an

22   inference of this purported agency relationship. And a conclusory allegation or legal

23   conclusion to that effect which is contained in a party's memorandum is wholly

24   insufficient to support the theory of liability. In the end, the SAC contains nothing

25   more than an allegation of ownership and a general reference to corporate

26   responsibilities, which is insufficient to support recovery against Defendants Guthy or

27   Renker based upon a theory of vicarious liability.

28

17

1   Nevertheless, the Court will also consider whether the SAC alleges facts

2   which might support a finding that Guthy and Renker should be held personally liable

3   for the actions of GRC and GRI based on principles of equity. "Ordinarily, a

4   corporation is regarded as a legal entity, separate and distinct from its shareholders,

5   officer and directors, with separate and distinct liabilities and obligations." Sonora

6   Diamond Corp. v. Superior Court, 83 Cal. App. 4th 523, 538 (2000)(citations

7   omitted); see also Gantman v. United Pac. Ins. Co., 232 Cal. App. 3d 1560, 1566

8   (1991). The equitable ownership of a corporation, however, may be held personally

9   liable for the actions of the corporation only where an abuse of corporate privileges

10  justifies piercing the "corporate veil" and disregarding the corporate entity. Sonora

11  Diamond Corp., 83 Cal. App. 3d at 538 (citation omitted).[11] The Court concludes the

12  SAC also fails to plead facts sufficient to support recovery against Defendants Guthy

13  and Renker based upon this theory of liability.

14  Application of the alter ego doctrine is one way in which a court may

15  pierce the "corporate veil," and hold liable the persons or other corporate entities

16  actually controlling the corporation. Id. (noting there must also be a showing that the

17  corporate form was used to "perpetuate a fraud, circumvent a statute, or accomplish

18  some other wrongful or inequitable purpose" before a court will disregard the

19  corporate entity). Here, the SAC alleges that Guthy and Renker are owners of GRI

20  and GRC, and possess responsibility for the activities of the officers, employees, and

21  agents of these two entities. (SAC ¶ 8). Even assuming the truth of this allegation,

22  the SAC contains no other facts or inferences to support a theory of liability under

23  the alter ego doctrine. Notably, the SAC does not affirmatively allege any theory

24  through which the Court should disregard the corporate entities of GRC and/or GRI

25  and make liable its equitable ownership. And this Court may not assume a plaintiff's

26

27  [11] A member of a limited liability company will also only be held personally liable "under the
    same or similar circumstances and to the same extent as a shareholder of a corporation may
28  be personally liable for any debt, obligation, or liability of the corporation." Cal. Corp. Code §
    17101 (a)(b) (West Supp. 2001).

1  intent to argue an alter ego theory, where, as here, the operative complaint fails to

2  even make conclusory allegations which would warrant application of the doctrine.

3  See Hokama v. E.F. Hutton & Co., Inc., 566 F.Supp. 636, 647 (C.D. Cal. 1983)

4  (applying California law and stating that when plaintiffs intend to pursue an alter ego

5  theory of liability, they must allege the elements of the doctrine in the complaint,

6  because conclusory allegations of alter ego status are insufficient).

7    In sum, the Court concludes that the SAC fails to pleads facts sufficient to

8  support recovery against Defendants Guthy and Renker.  Accordingly, the Court

9  **DISMISSES WITH PREJUDICE** Defendants Guthy and Renker.[12]

10   **b. Defendant GRC**

11   Contrary to the contentions made by the G-R Defendants in their moving

12 papers, the Court concludes that the SAC includes factual allegations which could

13 support recovery against Defendant GRC, as the complaint alleges specific facts

14 regarding GRC's participation in the transactions surrounding the ACM investment

15 scheme.  Thus, provided the derivative and proposed class action claims that remain

16 against GRC and GRI can be maintained by Plaintiff M. Albers, the Court concludes

17 that Defendant GRC should not be dismissed from the action at this time.[13]

18 **E. THE AGENCY THEORY OF RECOVERY AGAINST GRC AND GRI FOR THE ALLEGED**

19 **WRONGDOING OF THE AD CHOICE DEFENDANTS**

20   The SAC also includes a theory of recovery against GRC and GRI for the

21 alleged wrongdoing of the Ad Choice Defendants, which is based upon traditional

22 agency principles.  The crux of this theory is that GRC and GRI are liable for the

23 alleged wrongdoing of the Ad Choice Defendants because "both intentionally and by

24 want of ordinary care, [GRC] and GRI conferred ostensible authority on Ad Choice,

25 Brooks, and Malecki as their agents to represent [GRC] and GRI when conducting

26

27 [12] This holding relates to the following causes of action: IV, XIV and XVIII.

28 [13] The Court will address the issue of whether Plaintiff M. Albers can maintain the claims asserted under these two alternative theories of recovery below.

1    activities within that authority including, but not limited to, forming Ad Choice, selling

2    investments in ACM to their investors, and leasing Web pages to others." (SAC ¶

3    24, n. 15)(citing Cal. Civ. Code § 2330).

4         Defendants argue the SAC is insufficient to state a claim against GRC and

5    GRI under this theory because a bare conclusory allegation that an agency

6    relationship exists is insufficient without any supporting materials facts. (Mot. at 9;

7    Reply at 5, n. 12).  In support, Defendants offer the following arguments: (1) Plaintiffs

8    did not allege that GRI said or did anything directed at Plaintiffs which would confer

9    ostensible authority on the Ad Choice Defendants; (2) Plaintiffs concede they never

10   had any communication with the G-R Defendants regarding the ACM investment

11   scheme; (3) Plaintiffs could not have reasonably relied on any representation of

12   ostensible authority made by the Ad Choice Defendants, given that Plaintiffs admit

13   they understood the Ad Choice Defendants were acting as their agents at all times

14   relevant to the investment scheme at issue; and (4) the terms of the Associate

15   Agreement are inconsistent with Plaintiffs' allegation of an agency relationship.  (Mot.

16   at 9)(citing SAC ¶¶ 10, n. 9 and 25, n. 15).  Thus, the G-R Defendants argue GRC

17   and GRI are entitled to judgment on the pleadings on all claims based upon this

18   agency theory of liability.

19        After considering the operative complaint and relevant authority, the Court

20   concludes that the agency relationship alleged to exist between GRC/GRI and the

21   Ad Choice Defendants hinges on more than a conclusory allegation.  Contrary to the

22   contentions made by the G-R Defendants, the SAC does contain factual allegations

23   which, if ultimately proven true, could support the existence of this agency

24   relationship, and thus, a basis for recovery against GRC and GRI.

25        An agent is "one who represents another, called the principal, in dealings with

26   third persons."  Cal. Civ. Code § 2295 (West 1990).  Whether the agency is

27   categorized as actual or merely ostensible is determined by the manner in which the

28   principal manifested the agency relationship. § 2298.  "An agency is ostensible when

1   the principal intentionally, or by want of ordinary care, causes a third person to

2   believe another to be his agent who is not really employed by him." § 2300; see also

3   American Cas. Co. of Reading, Pa. v. Krieger, 181 F.3d 1113, 1121 (9th Cir.

4   1999)(applying California law); Kaplan v. Coldwell Banker Residential Affiliates, Inc.,

5   59 Cal. App. 4th 741, 747 (1997); Preis v. American Indemnity Co., 220 Cal. App. 3d

6   752, 761 (1990).

7          Ostensible authority cannot ever be based entirely on the agent's conduct,

8   and instead must be shown to exist through the acts or declaration of the principal.

9   Kaplan, 59 Cal. App. 4th at 747; Preis, 220 Cal. App. 3d at 761. Moreover, the

10  existence of an ostensible agency relationship is a question of fact. Kaplan, 59 Cal.

11  App. 4th at 748 (citations omitted)(noting it may be implied from circumstances).

12  Thus, before a principal can be held liable for the acts of an ostensible agent, the

13  following elements must be established: (a) representations made by the principal;

14  (b) justifiable reliance by a third party; and (c) a change in position from such reliance

15  which results in injury. Preis, 220 Cal. App. 3d at 761(citation omitted)(noting these

16  elements demonstrate that the theory of liability under ostensible agency is based on

17  the doctrine of estoppel).

18         Here, Defendants place a great deal of weight on the fact that the SAC is void

19  of any factual allegation that the G-R Defendants directed any communication or

20  action at the Albers which would induce their reasonable belief in Ad Choice's

21  authority to act on behalf of GRC and/or GRI.  (See Mot. 9-10; Reply at 6).  However,

22  the California authority cited above requires only that the principal *cause* a third party

23  to believe another is his agent when he is actually not, where this can occur

24  intentionally, by lack of ordinary care, or even where the principal "knows that the

25  agent holds himself out as clothed with certain authority, and remains silent."

26  American Casualty Co., 181 F.3d at 1121 (citing Preis, 220 Cal. App. 3d at 761).

27         In American Casualty, a California appellate court addressed the issue of

28

1    agency relationships in the context of an insurance company and the insured's

2    broker.  The action involved a dispute over insurance coverage, where the plaintiff

3    brought suit against, inter alia, an insured and his broker, claiming the broker had

4    arranged for the plaintiff to become an additional insured on the insured's policy.  Id.

5    at 1115.  The lower court held that the insurance broker was not an agent of the

6    insurance company, and thus, the company had no duty to defend or indemnify the

7    insured in the instant action.  Id. at 1117.  The appellate court reversed, holding that

8    a triable issue of fact remained regarding whether the insurance broker was the

9    ostensible agent of the insurance company for the limited purpose of adding an

10   additional insured to the policy in issue.  Id. at 1121-23.  The court explained that in

11   order to establish a triable issue of fact as to the broker's status as an ostensible

12   agent, the plaintiff had to produce some evidence that the insurance company, not

13   the broker, intentionally or negligently caused or allowed him to believe the broker

14   had the authority to add plaintiff as an additional insured.  Id. at 1121 (citing Preis,

15   220 Cal. App. 3d at 761).  The court further stated that even though the plaintiff had

16   presented no evidence of direct contact with the insurance company, the company

17   could still be held liable if the evidence establishes that the insurance company knew

18   the broker was holding himself out as having certain authority, yet remained silent.

19   Id. (noting the record included evidence that an insurance company's general agent

20   knew the broker was planning on issuing certificates of insurance on the company's

21   behalf).  Thus, the court concluded this evidence was sufficient to raise a triable

22   issue as to whether the insurance company "conveyed the impression to one named

23   as an additional insured that these certificates reflected an actual amendment to the

24   policy," because the insurer knew the broker held himself out as authorized to issue

25   standard form certificates on its behalf.  Id. at 1122.

26        In Preis, 220 Cal. App. 3d at 757, authority heavily relied upon by the court in

27   American Casualty, an appellate court also held that a genuine issue of material fact

28   remained as to whether an insurance company "negligently caused or allowed the

22

1   plaintiffs to believe the [insurance broker] possessed the authority to modify the

2   insurance policy" in issue in that coverage dispute.  The evidence in the record

3   before the court indicated that the insurer had given the broker certificate of

4   insurance forms to issue on the insurer's behalf, which included both the broker's

5   name and the name of the insurance company's general agent.  Thus, the court

6   concluded triable issues of fact remained regarding whether the insurance company

7   and its general agent knew or should have known that the broker was holding himself

8   out to the public as having authority to act on the insurer's behalf, and whether

9   plaintiffs reasonably believed the broker was acting as the insurer's agent.  Id. at

10  763.

11       Here, the SAC includes the allegation that GRC and GRI knew that Brooks

12  and Malecki formed Ad Choice (or the Cooperative) "for the purpose of obtaining

13  investors who would fund the purchase of Shares (or pages) in ACM, and that

14  Brooks and Malecki were executing such a plan," where GRC and GRI "accepted,

15  approved of, and encouraged this practice." (SUF ¶ 24, n. 15).  GRC and GRI also

16  apparently created an ACM logo and an "Associate's Logo," and encouraged the use

17  of that logo on letterhead, business cards, and other printed materials. (Id.)  The

18  SAC also alleges that the Ad Choice Defendants uses the Associate's Logo and the

19  GRC/GRI logo on their business cards and letterhead that was sent to investors.

20  (Id.) And there is an allegation that Malecki incorporated material given to him at the

21  seminar into a "prospectus" that he sent to investors, including the Albers. (Id.)

22       These factual allegations and the reasonable inferences that follow are

23  arguably sufficient to support the ostensible agency allegation, at least at this stage

24  in the litigation.  In light of the reasoning outlined in American Casualty and Preis, the

25  failure to allege direct representations from GRC and GRI to the Albers is not the end

26  of the inquiry.  GRI's creation and use of the term "Associate," along with the design

27  and encouraged use of the Associate's Logo, while not representations made directly

28  to the Albers, are general representations to the public of a relationship between

23

1   GRC/GRI and its Associates.  And these alleged representations can be construed

2   as having been made to the Albers by GRC and GRI (through the Ad Choice

3   Defendants).  Moreover, the allegations of the G-R Defendants' knowledge and

4   silence surrounding the Ad Choice Defendants' activities, if ultimately supported by

5   evidence, may be enough to raise a triable issue of fact regarding whether GRC and

6   GRI knew or should haven known that the Ad Choice Defendants were holding

7   themselves out as having authority to act on GRI's behalf with respect to activities

8   relating to the ACM scheme.

9         The G-R Defendants also argue that even if the requisite representations

10  were made to establish an ostensible agency relationship, given the allegation that

11  the Albers believed the Ad Choice Defendants were acting as their own agents at all

12  times, any reliance on representations that the Ad Choice Defendants were also

13  acting as the agents of GRC and GRI would be patently unreasonable.  (See Mot. at

14  9-10; Reply at 6))(citing SAC ¶ 10, n. 9).  The G-R Defendants cite no authority in

15  support of this argument of patent unreasonableness.  And in both American

16  Casualty and Preis, even though the insurance brokers were actual agents of the

17  insureds, both courts concluded a triable issue of fact remained regarding whether

18  the brokers were also the ostensible agents of the insurers.  Therefore, while M.

19  Albers may not be able to establish the reasonableness of her reliance at trial,

20  inferences must be drawn in her favor for purposes of resolving the present motion.

21  See General Conference Corp. of Seventh-Day Adventists, 887 F.2d at 230.

22  Furthermore, the Court notes that while the G-R Defendants' argument that the

23  alleged agency relationship is inconsistent with the terms of the Associate

24  Agreement might be persuasive under a discussion of actual agency, the issue here

25  is one of ostensible agency.

26        Overall, the Court concludes that although this agency theory of recovery will

27  likely be a difficult one for M. Albers to ultimately prove, provided she is able to

28  present evidence establishing the relevant facts alleged in support of these claims,

1   she may well be entitled to relief.  Thus, the Court concludes that GRC and GRI are

2   not entitled to judgment on the pleadings with respect to the (direct) claims which

3   seek recovery for the alleged wrongdoing of the Ad Choice Defendants.[14]

4   **F. THE OTHER ALTERNATIVE THEORIES OF RECOVERY**

5      **1. The Doctrine of Judicial Estoppel**

6      Before even reaching the merits of the derivative and proposed class action

7   claims, the G-R Defendants argue the Court should enter judgment in their favor as

8   to these remaining claims on the basis of the doctrine of judicial estoppel, asserting

9   the doctrine precludes Plaintiffs from alleging inconsistent and contradictory theories

10   of (multiple) recovery for the same injury.  (See Mot. at 10-11).  The Court disagrees,

11   and finds application of the judicial estoppel doctrine inappropriate under the

12   circumstances presented here.

13      The doctrine of judicial estoppel is not a bar to alternative pleading.  Rather,

14   the doctrine can be used to preclude a party from changing its position in a legal

15   proceeding after that party was successful in persuading a court to accept its earlier

16   position, "especially if it be to the prejudice of the party who has acquiesced in the

17   former position taken."  New Hampshire v. Maine, 532 U.S. 742, 749 (2001)(quoting

18   Davis v. Wakelee, 156 U.S. 680, 689 (1895)); Hamilton v. State Farm Fire & Cas.

19   Co., 270 F.3d 778, 783 (9th Cir. 2001).

20      While the SAC alleges inconsistent theories of liability with respect to the G-R

21   Defendants, it does so under three *alternative* theories of recovery: direct claims

22   brought by Plaintiffs in their individual capacity; derivative claims brought on behalf of

23   the Ad Choice Defendants; and proposed class action claims brought on behalf of

24   ACM investors.  (See SAC ¶¶ 26-27).  There is neither risk of prejudice to the G-R

25   Defendants, nor threat to judicial integrity, because no court has yet to "accept" any

26   prior inconsistent position taken by Plaintiffs.  See New Hampshire, 532 U.S. at 750

27

28   [14] This holding relates to the following causes of action: III, VII, X, XIII, XVII, XII, XXIV, XXVII and XXX.

25

1   (citation omitted)("Absent success in a prior proceeding, a party's later inconsistent

2   position introduces no 'risk of inconsistent court determination,' ... and thus poses

3   little threat to judicial integrity."); see also Hamilton, 270 F.3d at 783 (citation

4   omitted)("This court has restricted the application of judicial estoppel to cases where

5   the court relied on, or 'accepted,' the party's previous inconsistent position.").

6           **2. The Derivative Claims Generally**

7           As an initial matter, the Court observes that the derivative claims are outlined

8   in the SAC in what just might be the longest footnote to ever appear in a complaint.

9   Not only is the substance of the footnote confusing, but so too is its location within

10  the allegations setting forth the class action claims.  (See SAC ¶ 27, n. 17).  The

11  content and location of the footnote causes the Court to question whether the the

12  class action claims are based on, or at least related to, the derivative claims, or

13  whether the theories and claims are meant to be separate and unrelated.

14  Nevertheless, it is clear that Plaintiffs bring the derivative claims against GRC and

15  GRI on behalf of Ad Choice, based on their status as members of Ad Choice.  (See

16  id.)[15]  Alternatively, in the event Plaintiffs did not actually purchase membership

17  interests in Ad Choice, the derivative claims are also brought on behalf of the

18  Cooperative, where Plaintiffs apparently became limited partners of this de facto

19  limited partnership by virtue of their investment relating to the ACM Internet scheme.

20  (See id.)

21          Plaintiffs seek to recover the interest of Ad Choice (or the Cooperative) from

22  GRC and GRI, claiming that actions of these two companies in connection with the

23  ACM scheme, Ad Choice, Brooks and Malecki would not have purchased ACM

24  shares with the Albers' investment monies.  (See SAC ¶¶ 24, n. 16 and 27, n.17).

25  Plaintiffs allege that as officers and directors of Ad Choice (or as general partners of

26

27  _____

28  [15]  In light of the Court's determination that Albers, Jr. lacks standing to sue here, the Court will
    consider the relevant allegations from the SAC only in so much as they relate to Plaintiff M.
    Albers.

1   the Cooperative), Brooks and Malecki failed to bring an action on behalf of Ad

2   Choice (or the Cooperative) even though they had the capacity and claim to do so.

3   (Id. ¶ 27, n. 17).  Plaintiffs further allege a demand on Brooks and Malecki to bring

4   such claims would have been futile.  (Id.)

5        The G-R Defendants argue they are entitled to judgment in their favor as to

6   the derivative claims brought on behalf of Ad Choice and/or the Cooperative.  In

7   support of this contention, Defendants make the following arguments founded in

8   Texas corporations law: (1) Ad Choice could not sue on its own behalf because it is

9   not qualified to do business in California, and its Texas charter has been forfeited;

10   (2) Plaintiffs have never been members of Ad Choice; (3) the demand requirement

11   has not been satisfied; and (4) Plaintiffs cannot fairly and adequately represent the

12   interests of Ad Choice or the Cooperative in a derivative suit, given the claims also

13   pending against those two entities.  (See Mot. at 14-17)(asserting Texas law applies

14   because a limited liability company's capacity to sue is determined by the laws of the

15   state of its incorporation).  Plaintiffs counter that under California law, the only

16   relevant consideration for the Court is whether they have capacity to bring suit on

17   behalf of Ad Choice or the Cooperative, not whether Ad Choice or the Cooperative

18   would have the capacity to sue.  (See Opp. at 9-10)(insisting the Court should apply

19   California law when resolving the capacity and demand requirement issues

20   presented here).

21        A derivative action allows an individual shareholder to "bring suit to enforce a

22   corporate cause of action against officers, directors, and third parties."  Kamen v.

23   Kemper Fin. Servs., Inc., 500 U.S. 90, 95 (1991)(emphasis in original)(citing Ross v.

24   Bernhard, 396 U.S. 531, 538 (1970)).  Although the claim belongs to the corporation,

25   it is "pressed" by shareholders.  However, while the shareholder is the nominal

26   plaintiff, the corporation is the real party in interest, and thus, is also usually named

27   as a defendant.  Ross, 396 U.S at 538.  Moreover, the proceeds of the action

28   generally go to the corporation.  Id.  While derivative actions are usually brought in

1   the context of a shareholder on behalf of a corporation, courts also apply the

2   principles to suits brought by members or partners on behalf of other unincorporated

3   business entities organized under various state corporations laws.  See e.g., Paclink

4   Communications Int'l, Inc. v. Superior Court, 90 Cal. App. 4th 958 (2001).  After

5   applying these principles to the circumstances presented here, the Court concludes

6   the remaining G-R Defendants are entitled to judgment on the pleadings as to the

7   derivative claims brought on behalf of Ad Choice or the Cooperative.

8               **3. The Derivative Claims Brought On Behalf of Ad Choice**

9                       *a. Ad Choice's Capacity to Sue*

10          In light of the derivative nature of these claims, Ad Choice is the real party in

11   interest.  See Ross, 396 U.S. at 538; see also Fed. R. Civ. P. 17(a).  Thus, the Court

12   must turn to Federal Rule 17(b) to determine whether Ad Choice, not the individual

13   Plaintiffs, has the capacity to sue or be sued in this forum.

14          Federal Rule 17 provides, in pertinent part:

15          The capacity of an individual, other than one acting in a representative
            capacity, to sue or be sued shall be determined by the law of the
16          individual's domicile.  The capacity of a corporation to sue or be sued
            shall be determined by the law under which it was organized.  **In all other**
17          **cases capacity to sue or be sued shall be determined by the law of the**
            **state in which the district court is held,** except (1) that a partnership or
18          unincorporated association, which has no such capacity by the law of
            such state, may sue or be sued in its common name for the purpose of
19          enforcing for or against it a substantive right existing under the
            Constitution or law of the United States; ....
20

21   Fed. R. Civ. P. 17(b)(emphasis added).  Given that Ad Choice is neither an individual

22   nor a corporation, California law applies in this Court's determination of Plaintiffs'

23   capacity to bring the derivative claims.

24          Under California law, Ad Choice is defined as a foreign limited liability

25   company - "an entity formed under the limited liability company laws of any state

26   other than this state."  Cal. Corp. Code § 17001(q)(West Supp. 2001).  With respect

27   to actions or proceedings in the forum state which relate to a foreign limited liability

28   company, applicable law provides that a 'foreign limited liability company transacting

                                          28

1    intrastate business in this state shall not maintain any action, suit, or proceeding in

2    any court of this state until it has registered in this state." § 17456(a).  To satisfy this

3    registration process, a foreign limited liability company must complete an application

4    for registration on a prescribed form, and submit it to the Secretary of State with the

5    required accompanying documents. § 17451(a)(b)(stating registration should be

6    complete prior to transacting intrastate business in the state).

7         Here, the SAC alleges that Ad Choice conducted business with Plaintiffs and

8    the G-R Defendants in various California counties.  (SAC ¶ 2).  As the G-R

9    Defendants correctly point out, there are no allegations that Ad Choice currently

10   transacts any business in the forum, that it is currently registered with the California

11   Secretary of State, or that it ever registered prior to transacting business in this state.

12   (See Mot. at 15).[16]  The Court cannot assume Plaintiffs can prove facts which have

13   not even been alleged in the complaint. See Associated Gen. Contractors of Cal.,

14   459 U.S. at 526.  Thus, without even an allegation of registration, the Court

15   concludes that Ad Choice has no capacity to maintain an action in any court in the

16   forum state.

17        This conclusion begs the question whether the lack of capacity makes

18   operative Rule 17(b)(1), i.e., whether Ad Choice is an "unincorporated association"

19   with no capacity to sue by the law of the forum, who may sue in its common name for

20   the purpose of enforcing a federal substantive right under RICO.  Although the case

21

22   ─────────────────

23   [16] The G-R Defendants request this Court take judicial notice of the fact that a "search of the
     official records would reveal that no Texas limited liability company called 'Ad Choice,'
24   'AdChoice' or 'Adchoice' is certified with the Office of the Secretary of State in the State of
     California." (Notice ¶ 5).  The search in question was apparently performed in a public records
25   database maintained by Westlaw.  Plaintiffs oppose the request, asserting Defendants failed
     to provide a declaration from the individual who performed the search.  (Opp. to Notice at 6).
26   The Court finds the evidence submitted in support of Defendants' request insufficient to satisfy
     Federal Rule of Evidence 201.  Plaintiffs' objections are well taken, given that Defendants
27   provided no information regarding which Westlaw database(s) was used in performing the
     search in issue, nor did they submit a declaration by the individual who performed the
28   search(es) attesting to the process used or the truth of the results provided.  Accordingly, the
     Court **DENIES** the request.

1   law on this issue is limited, there is an argument to be made that Ad Choice falls

2   within the Rule's meaning of "unincorporated association."

3        In the context of Rule 17(b)(1), what is meant by "unincorporated association"

4   is a question of federal law. See Committee For Idaho's High Desert, Inc. v. Yost, 92

5   F.3d 814, 820 (9th Cir. 1996)(citing Associated Students of the Univ. of Cal. at

6   Riverside v. Kleindienst, 60 F.R.D. 65, 67 (C.D. Cal. 1973)).  Courts generally define

7   the term as "a voluntary group of persons, without a charter, formed by mutual

8   consent for the purpose of promoting a common objective." Id. at 820 (citing Local

9   4076, United Steelworkers v. United Steelworkers, 327 F.Supp. 1400, 1403 (W.D.

10  Pa. 1971)); see also EEOC v. St. Francis Xavier Parochial Sch., 77 F. Supp. 2d 71,

11  77 (D.D.C. 1999).

12       In Yost, the court affirmed the lower court's finding that the plaintiff, a non-

13  profit corporation organized under Idaho law who had forfeited its charter prior to the

14  filing of the action, had capacity to bring suit as an unincorporated association under

15  Rule 17(b)(1). See 92 F.3d at 818 (stating that "corporate disability under state law

16  did not preclude [the organization] from suing in federal court to vindicate rights"

17  under federal laws). However, in St. Francis, the court reasoned that a parish, an

18  unincorporated division of a corporation (the larger archdiocese), did not fall within

19  the Rule's definition of "unincorporated association," because the parish operated

20  under the charter of the larger archdiocese, and thus, enjoyed corporate status as a

21  unit of that larger corporation See 77 F. Supp. 2d at 77.  Thus, the court held the

22  parish lacked the legal capacity to be sued. Id. (noting the court's holding would not

23  frustrate enforcement of federal law, because a plaintiff may still bring suit against

24  the larger archdiocese relating to the actions of one of its divisions).

25       Here, the Court finds Ad Choice's status as a limited liability company to be

26  more closely analogous to the corporation in Yost than to the parish in St. Francis.

27  Although it appears that Ad Choice failed to properly register to conduct business in

28  California, it was duly organized and recognized as a legal entity under Texas law,

30

1   and only later forfeited its charter in February 2000 due to a failure to file franchise

2   tax reports.  (See Notice Ex. 3).  Therefore, the Court concludes that Ad Choice falls

3   within the federal definition of an "unincorporated association" under Rule 17(b)(1),

4   and thus has capacity to assert federal substantive rights under RICO.

5          Nevertheless, regardless of how this Court resolves the question of the

6   applicability of Rule 17(b)(1) to the derivative claim brought on behalf of Ad Choice

7   and under RICO, the company's capacity to bring state law claims is not covered by

8   the Rule's "unincorporated association" exception of sorts.  And the question of

9   whether Ad Choice has the capacity to bring those claims hinges on whether the

10  company has capacity to sue as "determined by the law of the state in which the

11  district court is held."  See Fed. R. Civ. P. 17(b); see also Caliber Partners, Ltd. v.

12  Affeld, 583 F.Supp. 1308, 1313 (N.D. Ill. 1984)(emphasis in original)(holding Rule

13  17(b) reflected that the limited partnerships "may sue in their common names to

14  enforce federal claims, but their capacity to bring state law claims depends on Illinois

15  law," where pendent jurisdiction did not save the state law claims).  Accordingly, the

16  Court **DISMISSES WITH PREJUDICE** the derivative claims which sound in state

17  law.[17]

18                    ***b. Plaintiffs' Status as Members of Ad Choice***

19         The G-R Defendants also argue Plaintiffs cannot maintain a derivative action

20  on behalf of Ad Choice because they have never been members of Ad Choice.  In

21  light of this Court's holding regarding Albers, Jr.'s lack of standing to bring this suit

22  under his own name, this argument is moot as it relates to Albers, Jr.  Thus, the

23  Court turns to consider the issue on ly in so much as it relates to Plaintiff M. Albers

24  and the remaining derivative claim under RICO.

25

26

27  ────────────

28  [17] This holding relates to the following causes of action: I, IV, V, VIII, XI, XIV, XV, XVIII, XIX, XXV and XXVIII.

1  Federal Rule of Civil Procedure 23.1 governs federal derivative actions

2  brought by shareholders or members to enforce the rights of a corporation or an

3  unincorporated association, and provides, in pertinent part:

4  [T]he complaint shall be verified and shall allege (1) that the plaintiff was a
   shareholder or member at the time of the transaction of which the plaintiff

5  complains or that the plaintiff's share or membership thereafter devolved on
   the plaintiff by operation of law, ....

6

7  Fed. R. Civ. P. 23.1.

8  The G-R Defendants argue Marcella Albers was not a member of Ad Choice

9  member at the time period relevant to the derivative action, because the earliest time

10  at which she could have become a member was November 1996 (the first payment

11  of investment monies to Ad Choice), and the time period relevant to the alleged

12  transactions between GRC/GRI and the Ad Choice Defendants at issue here date

13  back to the seminar attended by Defendant Malecki in June 1996.  (See Mot. at 15-

14  16)(citing SAC ¶¶ 21, n. 14 and 19).  In support of these contentions, the G-R

15  Defendants rely on relevant Texas authority which outlines the pleading

16  requirements for a plaintiff with standing to bring a derivative proceeding.  (Mot. at

17  15)(citing Edlund v. Bounds, 842 S.W.2d 719, 728-29 (Tex. App. 1992) and Crowley

18  v. Coles, 760 S.W.2d 347, 350 (Tex. App. 1988)).  The Court finds this argument

19  unavailing.

20  First, the Texas statute relied upon by the authority cited by the G-R

21  Defendants does not control in the instant action.  Instead, Federal Rule 23.1

22  governs the adequacy of (procedural) pleading requirements for a federal derivative

23  action.  See Kamen, 500 U.S. at 96.  Moreover, even the decision in Crowley is

24  distinguishable from the instant case, because the court only concluded that the

25  plaintiff lacked capacity to sue on behalf of the corporation and other shareholders

26  once it reached the summary judgment stage of the litigation, and thus, only after

27  evidence was presented which affirmatively established plaintiff was not a

28  shareholder at the time of the events in issue.  See 760 S.W.2d at 350.  In contrast,

1  at this stage in the litigation of the present action, the Court must accept as true the

2  allegation that M. Albers was a member of record of Ad Choice at all times relevant

3  to this action. (See SAC ¶ 27, n.17). Before this Court can make any further

4  determination of this factual issue as a matter of law, the parties should be afforded

5  the opportunity to present evidence outlining the exact dates of the transactions at

6  issue in the remaining derivative claim, and the time period (if ever) during which the

7  Albers were members of Ad Choice. Thus, the Court concludes that Plaintiff M.

8  Albers has the capacity to bring the federal derivative claim under RICO, and on

9  behalf of Ad Choice.

10                    ***c. The Demand Futility Rule***

11        The G-R Defendants also argue the present derivative action cannot be

12  maintained because Plaintiffs did not satisfy the demand requirement under Texas

13  law. (Mot. at 15). After reviewing the relevant authority, the Court agrees that Texas

14  law does require that a demand be made on the managers of a limited liability

15  company, and the operative complaint makes clear that no such demand was made

16  on the managers of Ad Choice. Thus, the Court concludes the remaining derivative

17  claim brought on behalf of Ad Choice cannot be maintained.

18        In order to prevent abuse of derivative actions, courts have created a pre-

19  condition to the bringing of such suits - "that the shareholder demonstrate 'that the

20  corporation itself had refused to proceed after suitable demand, unless excused by

21  extraordinary conditions.'" Kamen, 500 U.S. at 95-96; Ross, 396 U.S. at 534. This

22  pre-condition is even included as a pleading requirement in Federal Rule 23.1, which

23  provides, in pertinent part,

24        The complaint shall also allege with particularity the efforts, if any,
          made by the plaintiff to obtain the action the plaintiff desires from the
25        directors or comparable authority ... and, the reasons for the plaintiff's
          failure to obtain the action or for not making the effort.
26

27  Fed. R. Civ. P. 23.1.

28

1       In Kamen, the Supreme Court addressed the question of whether a federal

2 uniform demand rule with no futility exception was appropriate, even where the state

3 law governing the entity's incorporation recognized such an exception.  The action

4 involved a shareholder who brought a derivative action on behalf of a mutual fund

5 under the Investment Company Act ("ICA"), claiming the fund's investment advisor

6 issued a materially misleading proxy statement in violation of the ICA.  Kamen, 500

7 U.S. at 93.  The appellate court concluded that the plaintiff's failure to make a pre-

8 complaint demand on the fund did not comply with the requirements under Federal

9 Rule 23.1, and affirmed the lower court's dismissal of the action.  In reaching this

10 conclusion, the appellate court chose not to apply the futility exception found under

11 Delaware law - the law of the state of the fund's incorporation; rather, the court

12 adopted a federal "universal demand" rule which did not include a futility exception.

13 Id. at 94-95.  Upon granting cert, the Supreme Court considered the function of the

14 pre-complaint demand doctrine in derivative actions, and opined the doctrine serves

15 in "delimiting the respective powers of the individual shareholder and of the directors

16 to control corporate litigation [and] is clearly a matter of 'substance,' not 'procedure.'"

17 Id. at 96-97.  After reviewing the requirements and objectives of the ICA, the Court

18 concluded the federal statute did not address derivative proceedings and its

19 requirements or exceptions, and a futility exception to the demand requirement

20 would not impede the objectives of the ICA.  Id. at 108-09.  Therefore, the Court held

21 that when a court is entertaining a derivative action under the ICA, it must apply the

22 demand futility exception as defined by the law of the state of incorporation.  Id.  The

23 Ninth Circuit is in step with the Supreme Court on this issue.  See e.g., In re Silicon

24 Graphics Inc. Secs. Litig., 183 F.3d 970, 989-90 (9th Cir. 1999)(citing Kamen, 500

25 U.S. at 95)(holding that while Federal Rule 23.1 outlines the derivative suit demand

26 requirements, including the requirement that allegations relating to demand futility to

27 be plead with particularity, the law of the state of incorporation determines the

28 standards for determining when a demand is futile).

1      In the instant action, there are no compelling reasons for this Court to deviate

2   from the approach employed by both the Supreme Court and the Ninth Circuit, which

3   calls for the Court to look to the law of the state of incorporation - Texas - when

4   deciding matters relating to the demand doctrine.  The Texas Business Corporation

5   Act ("TBCA") Part 5 governs derivative proceedings, and is applicable to business

6   entities organized under both the TBCA and the Texas Limited Liability Company

7   Act.  See Tex. Civ. St. Ann. Art. 1528n, § 8.12 (Vernon 2001).  Article 5.14(C) of the

8   TBCA provides:

9           No shareholder may commence a derivative proceeding until:
            (1) a written demand is filed with the corporation setting forth with
10          particularity the act, omission, or other matter that is the subject
            of the claim or challenge and requesting that the corporation take
11          suitable action; and
            (2) 90 days have expired from the date the demand was made, unless
12          the shareholder has earlier been notified that the demand has been
            rejected by the corporation or unless irreparable injury to the corporation
13          is being suffered or would result by waiting for the expiration of the 90-day
            period.
14

15   Article 5.14 was amended effective September 1, 1997, and the demand futility

16   exception is no longer an option under the amended article.  See Pace v. Jordan,

17   999 S.W.2d 615, 621 (Tex. App. 1999).

18      Here, the SAC affirmatively alleges that no pre-complaint demand was made,

19   and explains why a demand would have apparently been futile.  (See SAC ¶ 27, n.

20   17).  The above authority makes it clear that Texas law requires that a pre-complaint

21   demand must have been made on the managers of Ad Choice, and there is no

22   question that Plaintiff M. Albers is unable to satisfy this requirement.  Therefore,

23   Court **DISMISSES WITH PREJUDICE** the remaining federal derivative claim

24   asserted under RICO.[18]

25

26

27

28

_____

[18] The Court's holding relates to cause of action XXII.

1                **d. Unclean Hands**

2         Finally, the G-R Defendants assert that even if Plaintiffs could cure any

3 pleading defect(s) identified by this Court with respect to the derivative claims,

4 Plaintiffs cannot fairly and adequately represent the interests of Ad Choice in a

5 derivative suit. Specifically, the G-R Defendants argue that because Plaintiffs also

6 seek to recover directly against the Ad Choice Defendants, they cannot also be said

7 to have the interest of the company in mind with respect to the promotion of the best

8 interests of Ad Choice and its other member investors in a derivative action. (Mot. at

9 16-17). Plaintiffs counter that because Federal Rule 8 allows inconsistent and

10 alternative theories to be plead in the same complaint, the reasoning underlying the

11 this unclean hands argument is unsound.

12         In light of this Court's dismissal of both the federal and state law derivative

13 claims, this argument need not even be addressed. Nevertheless, the Court notes

14 Defendants' argument is a persuasive one. Federal Rule 23.1 states that a federal

15 derivative action "may not be maintained if it appears that the plaintiff does not fairly

16 and adequately represent the interests of the shareholders or members similarly

17 situated in enforcing the right of the corporation or association." Fed. R. Civ. P. 23.1.

18         Moreover, courts have held that where a shareholder's interest in representing

19 other shareholders and the corporation are overshadowed by the shareholder's own

20 interest in pursuing personal litigation against the corporation, the individual should

21 not serve as a "representative plaintiff" in a derivative action. See Zarowitz v.

22 BankAmerica Corp., 866 F.2d 1164, 1166 (9th Cir. 1989)(holding a shareholder and

23 former employee of the corporation could not serve as a representative plaintiff

24 against officers and directors of a corporation because his personal litigation also

25 pending against the corporation for wrongful termination and defamation caused his

26 interests to significantly diverge from those of other shareholders); see also Blum v.

27 Morgan Guar. Trust Co. of N.Y., 539 F.2d 1388, 1391 (5th Cir. 1976)(holding plaintiff

28 was unable to represent the other shareholders adequately in a derivative action

1  because of personal litigation pending against the corporation arising from a debt
2  even larger than the recovery at issue in the derivative suit).

3       In the present action, in addition to bringing derivative claims on behalf of Ad
4  Choice, Plaintiff M. Albers also brings direct claims against the Ad Choice
5  Defendants, and even seeks a dissolution and accounting of the company.  (See
6  SAC ¶¶ 142-146).  Thus, the Court concludes M. Albers would be unable to
7  adequately represent Ad Choice in this derivative action even if the SAC satisfied all
8  procedural and substantive requirements relating to the pleading of the derivative
9  claims.

10       **4. The Derivative Claims on Behalf of the Cooperative**

11       The Court will not spend significant time addressing Plaintiffs' ability to
12  maintain identical derivative claim on behalf of the Cooperative, as many of the same
13  issues addressed and analyzed above with respect to the derivative claims brought
14  on behalf of Ad Choice apply to the issues raised here.

15       ***a. The Cooperative's Capacity to Sue***

16       The Cooperative is the real party in interest in a derivative action brought by
17  one of its limited partners.  See Ross, 396 U.S. at 538; see also Fed. R. Civ. P.
18  17(a).  Turning to the requirements of Rule 17(b), the Cooperative's capacity to sue
19  or be sued in this federal forum is also determined by the law of the forum.  The
20  California Revised Limited Partnership Act defines a foreign limited partnership as a
21  "partnership formed under the laws of any state other than this state ... and having as
22  partners one or more general partners and one or more limited partners."  Cal. Corp.
23  Code § 15611(h)(West Supp. 2001).  Similar to a foreign limited liability company, a
24  foreign limited partnership must register with the Secretary of State prior to
25  transacting intrastate business in California.  § 15692.  Moreover, Section 15697 of
26  the Act provides, in pertinent part:

27          (a) A foreign limited partnership transacting business in this state may
         not maintain any action, suit, or proceeding in any court in this state
28          until it has registered in this state ...

(c) The failure of a foreign limited partnership to register in this state does not impair the validity of any contract or act of the foreign limited partnership or prevent the foreign limited partnership from defending any action, suit, or proceeding in any court in this state.

Cal. Corp. Code § 15697 (a)(c).

Here, the SAC includes an allegation that the Ad Choice Defendants have done business "with the other Defendants named herein in one or more of the counties of this Central District, yet the complaint fails to allege whether the Cooperative ever registered with the California Secretary of State. (See SAC ¶ 2).[19] As this Court discussed above, it is not proper to assume facts can ultimately be proven which were never alleged in the complaint. See Associated Gen. Contractors of Cal., 459 U.S. at 526. Even though the Cooperative is named as a Defendant, because the entity is the real party in interest, it is not actually the party defending under the derivative claims; rather, the Cooperative is more closely analogous to the party maintaining the claims. See Ross, 396 U.S. at 538. Thus, weighing in favor of form over substance, the Court concludes Section 15697(a) applies under the present circumstances, which precludes the Cooperative from proceeding in any court in this state. Accordingly, the Court holds that because the Cooperative lacks capacity to assert the claims at issue here, Plaintiffs also lack capacity to bring these claims on behalf of the Cooperative.

This conclusion again begs the question whether Rule 17(b)(1) becomes operative under these circumstances, i.e., whether the Cooperative is an "unincorporated association" as defined by federal law. See Yost, 92 F.3d at 820 (applying the common definition of "a voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common objective"). While the G-R Defendants dispute whether the Cooperative is really even a de facto limited

---

[19] Defendants also request this Court take judicial notice of the fact that "[a] search of the official records would reveal that no limited partnership called 'The Cooperative' ... is registered with the Offices of the Secretary of State of Texas or California." (Notice ¶ 6). The Court **DENIES** this request based upon the same concerns outlined above in connection with the discussion of Ad Choice's capacity to sue.

1   partnership under Texas law, the Court must accept as true the allegations

2   characterizing the entity as such for purposes of this motion. See General

3   Conference Corp. of Seventh-Day Adventists, 887 F.2d at 230. Moreover, the Court

4   finds that the Cooperative arguably falls within the definition of an "unincorporated

5   association" under Rule 17(b)(1), which confers the Cooperative (and its limited

6   partners, derivatively) with the capacity to assert federal substantive rights under

7   RICO.

8          Therefore, the Court concludes that Plaintiff M. Albers has capacity to bring a

9   federal cause of action under RICO on behalf of the Cooperative, yet lacks capacity

10  to assert any derivative claims sounding in state law. See Caliber Partners, Ltd., 583

11  F.Supp. at 1313. Accordingly, Plaintiffs' state law derivative claims brought on behalf

12  of the Cooperative are **DISMISSED WITH PREJUDICE.**[20]

13              ***b. Unclean Hands***

14         The Court's analysis regarding whether Plaintiff M. Albers can fairly and

15  adequately represent the interests of the Cooperative in a derivative suit is identical

16  to that addressed above with respect to her ability to represents the interests of Ad

17  Choice in the same derivative action. Thus, based upon the same reasons as set

18  forth above, the Court concludes M. Albers is unable to adequately represent the

19  Cooperative in this derivative action, given the direct claims she also asserts against

20  the Cooperative, which include both a request for an accounting and the dissolution

21  of the Cooperative. (See SAC ¶¶ 147-56). Accordingly, the Court **DISMISSES**

22  **WITH PREJUDICE** the remaining derivative claim brought under RICO, and on

23  behalf of the Cooperative.[21]

24

25

26

27  [20] This holding relates to the following causes of action: I, IV, V, VIII, XI, XIV, XV, XVIII, XIX, XXV and XXVIII.

28  [21] This holding relates to cause of action XXII.

### 5. The Proposed Class Claims

Plaintiffs also bring proposed class action claims against GRC and GRI under Rule 23(a) and (b)(3) "on behalf of all persons who attended seminars hosted by [GRC] or GRI, at which those persons purchased or acquired Page Shares (or Web pages) ... in ACM from [GRC] and/or GRI, directly or indirectly, or who otherwise acquired – or became owners or beneficial owners of – such Shares (or pages) in ACM, excluding the G-R Defendants, their officers, employees and agents, family members, interested parties, Brooks or Malecki." (SAC ¶¶ 26, 27).  The SAC includes allegations relating to numerosity, commonality and typicality.  (See id. ¶¶ 28-30).

The G-R Defendants argue Plaintiffs lack standing to bring these class action claims because they did not suffer any direct injury as a result of the alleged dealings between GRI/GRC and the Ad Choice Defendants surrounding the ACM investment scheme, and cannot serve as class representatives without a direct injury common to all class members.  (See Mot. at 19).  Plaintiffs counter that the class action theory is a valid one, and the SAC properly pleads the claims.  (Opp. at 7-8).  After considering the relevant allegations in the SAC and the relevant case law, the Court concludes that Plaintiffs fail to satisfy the threshold standing requirements under Article III.

Although there is no separate standing requirement for class actions, individual Article III standing remains a threshold question in all lawsuits, including those asserting class action claims.  See Simon v. Eastern KY Welfare Rights Org., 426 U.S. 26, 40 (1976) (quoting Warth v. Seldin, 422 U.S. 490, 502 (1975))("[E]ven named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'").  A court's determination that a plaintiff has individual standing is "sufficient to confer the right to assert issues that are common to the class, speaking from the perspective of any

1  standing requirements." Herbert B. Newbert, et. al, 1 <u>Newberg on Class Actions</u> §

2  2.05 (3d. ed. 1992). Upon resolving any outstanding questions relating to standing,

3  a court must turn to the separate and distinct question of whether the plaintiff has

4  met the additional procedural requirements for the pleading of class action claims,

5  which are set forth in Federal Rule 23. <u>See id</u>.

6        After reviewing the operative complaint here, the Court notes there appears to

7  be some confusion between the parties regarding whether the class action claims

8  are brought by Plaintiffs in their individual capacity, or whether the claims are brought

9  on behalf of Ad Choice and/or the Cooperative, as the allegations relating to the

10  derivative claims are contained in a footnote that is located within the allegations

11  relating to the class action claims. However, Plaintiffs make clear in their opposing

12  papers that the class action claims are not derivative in nature, and are brought on

13  behalf of all those who were defrauded by the G-R Defendants. (<u>See</u> Opp. at 8).

14  Thus, given the Court's above conclusion that Albers, Jr. lacks standing to bring this

15  action in his own name, regardless of the nature of that claim, the only question

16  remaining for the Court to address here is whether Plaintiff M. Albers has standing to

17  bring these class claims in her individual capacity.

18        The proposed class is defined as those who attended GRI seminars and

19  purchased ACM shares, and those who otherwise became owners of such shares.

20  (Opp. at 8). As an initial matter, the Court questions whether M. Albers is even a

21  member of the defined class. While she apparently invested in the ACM scheme

22  indirectly through Ad Choice, the company is the actual owner of the Page Shares.

23  (<u>See</u> SAC ¶ 23). However, even assuming Plaintiff was one of the "beneficial

24  owners," she has not alleged any direct injury caused by the G-R Defendants'

25  alleged wrongdoing. As this Court discussed above in Section C, any harm arising

26  from such alleged wrongdoing would be to Ad Choice or the Cooperative, because

27  an investor like Marcella Albers would only suffer an indirect loss in the return of her

28  investment. Therefore, the Court concludes that Plaintiff M. Albers has not alleged

1    an injury in fact sufficient to satisfy the requirements of Article III standing.  <u>See</u>

2    <u>Paclink</u>, 90 Cal. App. 4th at 964.  Furthermore, given this Court's conclusion

3    regarding the absence of standing, the Court need not even reach the question of

4    the adequacy of the class action claims with respect to the procedural requirements

5    under Federal Rule 23.  Accordingly, the Court **DISMISSES WITH PREJUDICE** all

6    proposed class action claims brought against the G-R Defendants.[22]

7    <u>G. THE PROPRIETY OF THE RICO CLAIM REMAINING AGAINST GRC AND GRI</u>

8          In light of the Court's above conclusions, the only remaining RICO claim

9    asserted against the G-R Defendants is the claim brought against GRC and GRI

10    under the agency theory of liability for the alleged wrongdoing of the Ad Choice

11    Defendants – Claim XXIV.  Thus, in order to adequately assess the propriety of this

12    claim, the Court must consider whether the SAC properly alleges a RICO claim

13    against the Ad Choice Defendants under Claim XXIII.  (<u>See</u> SAC ¶¶ 121-129).

14          The G-R Defendants take the position that this one remaining federal cause of

15    action must also fail because the relevant allegations in the SAC are nothing more

16    than a direct recitation of the statute's requirements, and thus, are insufficient under

17    the heightened pleading standards of Federal Rule 9.  (Mot. at 23-24; Reply at 21).

18    Plaintiffs counter that the claim has been properly plead, because the claim

19    incorporates and re-alleges prior allegations found within the SAC, which combine

20    together to plead the cause of action with particularity.  (<u>See</u> Opp. at 20-22).  In the

21    end, the Court concludes the SAC fails to plead with particularity factual allegations

22    setting forth all necessary elements of a substantive violation under RICO.  Thus,

23    Claims XXIII and XXIV must be dismissed.  <u>See</u> <u>Balistreri v. Pacifica Police Dep't</u>,

24    901 F.2d 696, 699 (9th Cir. 1990)(holding dismissal is appropriate where insufficient

25    facts are pled to support a cognizable legal theory).

26

27    ––––––––––––––––

28    [22] The Court's holding relates to the following causes of action: I, IV, V, VIII, XI, XIV, XV, XVIII, XIX, XXII, XXV and XXVIII.

1    **1. Elements of a Civil RICO Claim**

2         RICO grants a private right of action to "[a]ny person injured in his business or

3    property by reason of a violation of section 1962 of this chapter." 18 U.S.C. §

4    1964(c). Section 1962, in turn, contains four subsections which make it unlawful to:

5    (a) invest income derived from a pattern of racketeering activity in an enterprise; (b)

6    acquire or maintain an interest in an enterprise through a pattern of racketeering

7    activity; (c) conduct the affairs of an enterprise through a pattern of racketeering

8    activity; or (d) conspire to commit any of the above acts. § 1962(a)-(d). Thus, to

9    state a claim for a civil RICO violation, a private plaintiff must allege facts showing (1)

10   an injury to business or property and (2) a substantive violation of one or more

11   subsections of 1962.

12        **2. Injury to Business or Property**

13        RICO does not afford a civil remedy for all injuries caused by unlawful

14   racketeering activity; only injuries to "business or property" are actionable. 18 U.S.C.

15   § 1964(c). In the Ninth Circuit, "injuries to property are not actionable under RICO

16   unless they result in tangible financial loss to the plaintiff." Oscar v. University

17   Students Co-op Ass'n, 965 F.2d 783, 785 (9th Cir.)(en banc), cert. denied, 506 U.S.

18   1020 (1992)(concluding plaintiffs fail to allege any pecuniary injury to their interest in

19   rental property caused by alleged acts of racketeering); Imagineering, Inc. v. Kiewit

20   Pacific Co., 976 F.2d 1303, 1311 (9th Cir. 1992), cert. denied, 507 U.S. 1004

21   (1993)(affirming dismissal of RICO claim where it was impossible to determine from

22   the complaint whether plaintiffs were alleging lost opportunity to realize profits or loss

23   of specific identifiable profits).

24        The Supreme Court has described a RICO injury as an issue of standing.

25   Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). Whether a plaintiff has

26   alleged an injury to business or property giving rise to standing under RICO is a

27   question of law for the court to determine, and may be properly raised on a motion to

28

1   dismiss.  See Oscar, 965 F.2d at 785 (upholding dismissal of complaint for failure to

2   allege an injury to property); Doe v. Roe, 958 F.2d 763, 767-68 (7th Cir. 1992).

3          Here, the SAC adequately alleges injury to the property of M. Albers – the loss

4   of $36,000 from her and her husband's investment in Ad Choice.  Even without any

5   specific and identifiable lost profit arising from the investment, there is a tangible

6   financial loss of the initial investment.  Thus, the Court concludes that Plaintiff M.

7   Albers has standing to bring this RICO claim.

8          **3. Substantive Violation**

9          In addition to satisfying the statutory requirements relating to standing to bring

10   a RICO claim, in order to state a claim for damages under Section 1964(c), a private

11   plaintiff must also adequately allege a substantive violation of the statute under one

12   of the four subsections set forth in Section 1962.  In this case, the SAC includes

13   claims under subsections b, c and d.  (See SAC ¶¶ 121-26).  However, the Court

14   concludes that the SAC fails to sufficiently plead with particularity the factual

15   allegations underlying all three substantive violations in issue.

16          ***a. Section 1962(b)***

17          Section 1962(b) makes it unlawful to acquire an interest in or control of an

18   enterprise through a pattern of racketeering activity.  18 U.S.C. § 1962(b); Schreiber

19   Distributing Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1398-99 (9th Cir. 1986).

20   Allegations that a plaintiff was injured by a predicate act of racketeering are

21   insufficient to state a claim for damages based on a violation of Section 1962(b).

22   Rather, a plaintiff must allege he or she was injured by the defendant's acquisition of

23   an interest in an enterprise.  See Nugget Hydroelectric, L.P. v. Pacific Gas & Elec.

24   Co., 981 F.2d 429, 437 (9th Cir. 1992), cert. denied, 508 U.S. 908 (1993)(requiring

25   plaintiff to plead injury due to defendant's investment of income generated by

26   racketeering activity for civil claim based on violation of section 1962(a)); see also

27   Advocacy Org. for Patients and Providers v. Automobile Club Ins. Ass'n, 176 F.3d

28   315, 329 (6th Cir. 1999)("[A] complaint for a violation of Section § 1962(b) must

44

1   allege an 'acquisition or maintenance' injury separate and apart from the injury

2   suffered as a result of the predicate acts of racketeering activity."); Compagnie De

3   Reassurance D'Ile de France v. New England Reinsurance Corp., 57 F.3d 56, 92

4   (1st Cir.), cert. denied, 516 U.S. 1009 (1995)(same).

5        Here, the SAC fails to adequately allege an "acquisition or maintenance"

6   injury.  The SAC alleges that the enterprise was Ad Choice itself, where Ad Choice,

7   Brooks and Malecki "have received income derived, directly or indirectly, ... and have

8   used or invested, directly or indirectly, part of such income or the proceeds of such

9   income, in the acquisition of an interest in, or the establishment or operation of said

10   enterprise ...."  (SAC ¶ 122).  Here, the relevant injury is alleged to have occurred

11   "[a]s a direct result of the Defendants' illegal racketeering activities that are violative

12   of RICO, as well as the predicate acts that are alleged herein."  (SAC ¶ 128).  This

13   allegation establishes that the alleged injuries arise out of the racketeering activities,

14   and not the acquisition or maintenance of an interest in the Ad Choice enterprise.

15          ***b. Section 1962(c)***

16        Section 1962(c) makes it unlawful for any person to participate in the affairs of

17   an enterprise that affects interstate commerce through a pattern of racketeering

18   activity.  18 U.S.C. § 1962(c); Sedima, 473 U.S. at 496.  The terms "enterprise,"

19   "racketeering activity," and "pattern of racketeering activity" are defined in Section

20   1961.  To allege a violation under this sub-section, a plaintiff must allege that a

21   defendant, through the commission of two or more acts constituting a pattern of

22   racketeering activity, directly or indirectly participated in an enterprise, the activities

23   of which affected interstate or foreign commerce.[23]

24

25   [23] The requirements of section 1962(c) must be established as to each defendant.  See United

26   States v. Persico, 832 F.2d 705, 714 (2d Cir. 1987), cert. denied, 486 U.S. 1022 (1988)("The
focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant,

27   rather than the collective activities of the members of the enterprise, which are proscribed by
section 1962(d)"); Benet-Soto v. Chase Manhattan Bank, N.A., 791 F. Supp. 914, 919 (D.P.R.

28   1992)("The most basic requirement for sustaining a RICO action is establishing defendants'
involvement in the racketeering acts.").

1    Section 1961(1) enumerates a list of state and federal crimes that constitute

2    racketeering activity and serve as predicate acts under the statute.  The enumerated

3    crimes are exclusive; conduct that does not constitute a listed offense cannot

4    constitute racketeering activity.  United States v. Private Sanitation Indus. Ass'n of

5    Nassau/Suffolk, Inc., 793 F. Supp. 1114, 1129 (E.D.N.Y 1992).  Racketeering activity

6    is not adequately alleged simply by repeating the laundry list of predicate acts

7    contained in the statute without including facts which would suggest such crimes

8    have indeed been committed.  Moreover, RICO claims based on predicate acts

9    involving fraud must be pled with particularity under Rule 9(b).  Planned Parenthood

10   of Columbia/Williamette, Inc. v. American Coalition of Life Activists, 945 F. Supp.

11   1355, 1379 (D. Or. 1996)(collecting cases).  Even under the more lenient and liberal

12   standard of Rule 8, conclusory allegations are insufficient.  See Jennings v. Emry,

13   910 F.2d 1434, 1436, n.1 (7th Cir. 1990)(concluding RICO plaintiffs may not

14   substitute conclusory statements for minimally sufficient factual allegations);

15   Advocacy Org. for Patients, 176 F.3d at 329 (holding a plaintiff may not state a RICO

16   claim by "simply parrot[ing] the language of RICO statute").

17   Here, the SAC contains an allegation that Defendants engaged in "repeated

18   acts that are indictable under the federal criminal code, including, but not limited to,

19   mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343)." (SAC ¶ 123).  This

20   is nothing more than a conclusory allegation of racketeering activity which fails to

21   satisfy even the liberal pleading standard under Rule 8.  See McGlinchy, 845 F.2d at

22   810.  In their opposition, Plaintiffs contend that even the higher Rule 9 pleading

23   standard is satisfied, because paragraph 123 of the SAC incorporates factual

24   allegations made in earlier SAC paragraphs.  (Opp. at 21-22)(citing SAC ¶¶ 17-23).

25   However, even with the incorporation of these earlier factual allegations, the Court

26   fails to see how the SAC satisfies either the Rule 8 or Rule 9 pleading standards.

27   The earlier paragraphs relied upon by Plaintiffs relate to allegations of mail fraud

28   committed by the G-R Defendants, and say nothing about the alleged fraudulent

1  wrongdoing of the Ad Choice Defendants which would even arguably give rise to the

2  level of racketeering activity.  And as the authority noted above teaches, a plaintiff

3  must establish each individual defendants' involvement in the alleged racketeering

4  acts.  See Persico, 832 U.S. at 714; Benet-Soto, 791 F. Supp. at 919.

5      Thus, the Court concludes that the SAC does not plead facts sufficient to

6  allege a predicate act of racketeering activity which caused Plaintiff M. Albers'

7  injuries.  In light of this conclusion, the Court need not proceed to consider whether

8  the SAC alleges facts that suggest the predicate acts constitute a "pattern" of

9  criminal activity pursuant to Section 1962, or whether the SAC adduces "evidence of

10  an ongoing organization, formal or informal, and ... evidence that the various

11  associates function as a continuing unit."  See United States v. Turkette, 452 U.S.

12  576, 587 (1981).[24]

13      **c. Section 1962(d)**

14      Section 1962(d) makes it unlawful for any person "to conspire to violate any of

15  the provisions of subsection (a) through (c).  18 U.S.C. § 1962(d).  A conspiracy to

16  violate RICO consists of two agreements.  "The first is an agreement to conduct or

17  participate in the affairs of the enterprise [or to acquire or maintain an interest in or

18  control of any enterprise] through a pattern of racketeering activity.  The second is an

19  agreement to the commission of at least two predicate acts."  Gagan v. American

20  Cablevision, Inc., 77 F.3d 951, 961 (7th Cir. 1996)(internal citations omitted); Baumer

21  v. Pachl, 8 F.3d 1341, 1326 (9th Cir. 1993).

22      Here, the SAC contains allegations that the Ad Choice Defendants "have

23  combined and conspired – among themselves and with third parties – to receive the

24  aforesaid income, and to acquire or maintain such interest or control of said

25  enterprise, and have been employed by or associated with said enterprise."  (SAC ¶

26

27  ─────────────────

28  [24] The Court also stops to note that it seems counter-intuitive that Ad Choice is named as an individual defendant who participated in the affairs of itself by engaging in a pattern of racketeering activities, as Ad Choice is the alleged enterprise.

1  122)(citing 18 U.S.C. § 1962).  The complaint further alleges "[e]ach of the

2  Defendants has been engaged in a conspiracy and common course of conduct,

3  acting in concert with the other Defendants and aiding and abetting one another to

4  accomplish the wrongs complained of herein." (Id. ¶ 125).  These allegations fail to

5  provide any specific facts relating to the requisite agreement for a claim of

6  conspiracy under RICO, and appear to be nothing more than conclusory statements

7  that track the language of the statute.  Moreover, in light of the allegations that

8  Defendants' activities were "fraudulent, oppressive and malicious," the SAC clearly

9  fails to meet the heightened Rule 9 pleading standard.  Accordingly, the Court also

10  concludes that the SAC fails to sufficiently plead facts alleging a conspiracy

11  actionable under Section 1962(d).

12        In sum, although Plaintiff M. Albers has alleged a compensable injury to

13  business or property, the factual allegations surrounding the substantive RICO

14  claims are insufficient to survive the present motion.  The SAC includes no factual

15  allegations which, if ultimately proven to be true, would support recovery against the

16  Ad Choice Defendants under RICO, and thus, against GRC and GRI under the

17  agency theory of liability.  Therefore, the Court **DISMISSES WITH PREJUDICE** the

18  RICO claims asserted against both the G-R Defendants and the Ad Choice

19  Defendants.[25]

20  **H. THE REMAINING STATE LAW CLAIMS ASSERTED AGAINST GRC AND GRI**

21        In light of this Court's dismissal of Plaintiffs' direct, derivative and class action

22  claims brought against the G-R Defendants on the basis of their own alleged

23  wrongdoing, the only remaining claims alleged against GRC and GRI are those

24

25  [25]  The Court notes that although the Ad Choice Defendants are not moving in the present
26  motion, dismissal of both remaining claims is appropriate here.  Provided all parties are given
   notice and the opportunity to be heard, "the legal sufficiency of the complaint may also be raised
27  by the court sua sponte, and judgment entered accordingly.  William W. Schwarzer, et. al.,
   California Practice Guide: Federal Civil Procedure Before Trial, § 9:329 (The Rutter Group
28  2001)(citing Flora v. Home Fed'l Sav. & Loan Ass'n, 685 F.2d 209, 212 (7th Cir. 1982)).  Thus,
   this holding relates to the following causes of action: XXIV and XXIII.

1 | claims brought under the agency theory of liability for the alleged wrongdoing of the

2 | Ad Choice Defendants.  Moreover, given this Court's conclusion that the RICO

3 | claims asserted against GRC/GRI and the Ad Choice Defendants must both be

4 | dismissed on the basis of insufficient pleadings, the only causes of action that

5 | remain in this case are various state law claims brought against GRC and GRI and

6 | the Ad Choice Defendants.

7 |     Therefore, in light of this Court's dismissal of the federal claims on which its

8 | original jurisdiction was based, the Court declines to exercise supplemental

9 | jurisdiction over the remaining state law claims.  See 28 U.S.C. § 1367 (c)(3); see

10 | also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)(citing United Mine

11 | Workers v. Gibbs, 383 U.S. 715, 726-27 (1966)); Acri v. Varian Assoc., Inc., 114

12 | F.3d 999, 1001 (9th Cir. 1997)("While discretion to decline to exercise supplemental

13 | jurisdiction over state law claims is triggered by the presence of one of the conditions

14 | in § 1367(c), it is informed by the Gibbs values "of economy, convenience, fairness,

15 | and comity."); Wren v. Sletten Const. Co., 654 F.2d 529, 536 (9th Cir.1981)

16 | (emphasis in original)("When the state issues apparently predominate and all federal

17 | claims are dismissed before trial, the proper exercise of discretion requires dismissal

18 | of the state claim.").  Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** the

19 | remaining state law claims brought against GRC and GRI as well as the Ad Choice

20 | Defendants.

21 | //

22 | //

23 | //

24 | //

25 | //

26 | //

27 | //

28 | //

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# IV.

## CONCLUSION

For the numerous reasons as set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Judgment on the Pleadings, and **DISMISSES** the action in its entirety.

IT IS SO ORDERED.

DATED: August 26, 2002

Judge Gary Allen Feess
United States District Court